**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

American Trim, L.L.C.,                              3:99CV7265

     Plaintiff,

    v.

Oracle Corporation,                                  ORDER

     Defendant.

This is a civil action in which plaintiff asserts breach of contract and fraud claims relating to a software package sold to plaintiff by defendant.  This court has jurisdiction pursuant to 28 U.S.C. § 1332.  Pending is defendant's motion for partial summary judgment.  For the following reasons, defendant's motion will be granted in part and denied in part.

**Background**

This action arises out of a sale of software products by defendant Oracle Corporation ("Oracle") to plaintiff American Trim, L.L.C. ("American Trim").  Oracle delivered a package of software products to American Trim which did not contain software with the capabilities American Trim sought.  After Oracle refused to refund the purchase price to American Trim, American Trim brought this action.  American Trim asserts that Oracle purposefully led American Trim to believe Oracle was selling a product that did not, in fact, yet exist.  Oracle maintains that it sold and delivered

to American Trim exactly what their contract required.

## Discussion

### I. Choice of Law

The final contract between the parties contains a choice of law provision which reads: "This Agreement, and all matters arising out of or relating to this Agreement, shall be governed by the laws of the State of California." (Doc. 53, Ex. 11 at A00492).

As a federal court sitting in diversity jurisdiction, I apply the choice-of-law principles of the forum state. See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487 (1941). Ohio law favors upholding a contractual choice-of-law provision unless the chosen state has "no substantial relationship to the parties or the transaction." Tele-Save Merchandising Co. v. Consumers Distributing Co., 814 F.2d 1120, 1122. The "substantial relationship" test is satisfied if "one of the parties is domiciled or has his principle place of business" in the chosen state. Restatement (Second) of Conflict of laws, § 187. Defendant has its principle place of business in California.

Controlling Sixth Circuit precedent determines the issues of whether the forum selection clause applies to both the contract and tort claims. In Moses v. Bus. Card Express, Inc., 929 F.2d 1131 (6th Cir. 1991), the court scrutinized a forum selection clause in a franchise agreement. The Moses plaintiffs, like American Trim, alleged that the entire contract had been induced by fraud, and that the forum selection clause was thereby rendered a nullity. Id. at 1135. The court stated that it was "settled law that unless there is a showing that the alleged fraud or misrepresentation induced the party opposing a forum selection clause to *agree to the inclusion of that clause* in the contract, a general claim of fraud or misrepresentation as to the entire contract does not affect the validity of the forum selection

2

clause . . . ." Id. at 1138 (citing Scherk v. Alberto-Culver Co., 417 U.S. 506 (1974)). As plaintiff makes no claim that the forum selection clause itself was induced by fraud, the selection clause is valid and California law will govern the contract claims.

The forum selection clause likewise governs the tort claims. The Moses plaintiffs, like American Trim, also asserted that the forum selection clause should apply only to construction of the contract itself, and not to their claims of fraud and misrepresentation. The relevant language of the forum selection clause n Moses read, "This franchise License and Agreement and the construction thereof shall be governed by the laws of the State of Michigan . . . ." Id. at 1139. The court found that this language was broad enough to include more than just the construction of the contract, stating, "[plaintiffs] put the validity of the contract in issue, and such a claim would appear to be encompassed by the language . . . ." Id. at 1140. The relevant language in this case, encompassing the agreement and all matters arising out of or relating to the agreement, is even broader than the language in Moses, and so applies to the tort claims as well as to the contract claims. Thus, the law of California governs plaintiff's fraud and negligent misrepresentation claims.

Plaintiff's assertion that attorneys' fees are recoverable in this case is supported only by the Ohio cases which plaintiff cites in support of its claim that Ohio law, which would permit recovery of attorneys' fees, governs the tort claims. Because I find that controlling Sixth Circuit precedent requires that California law governs the tort claim, these cases cannot support the assertion that attorney's fees are recoverable.

In California, attorney's fees are recoverable only in the following circumstances: 1) a statute or an agreement of the parties specifically provides for recovery of attorney fees; 2) the litigation confers

3

benefits upon others (class action/common fund case); 3) the litigation confers a benefit on the defendant (corporate derivative actions); 4) the litigation confers benefits on a large class of persons "by effectuating" a strong public policy" (the "private attorney general" doctrine); 5) the plaintiff was "required to employ counsel to prosecute or defend an action against a third party because of the tort of the defendant" (the "tort of another doctrine"). Gray v. Don Miller & Ass., Inc., 35 Cal. 3d 498, 504-05. Attorneys' fees are not generally recoverable in fraud cases. Id. at 507.

Plaintiff, though not refuting the law of California, asserts that attorneys' fees should be recoverable in this case because fundamental Ohio policy would be violated if attorneys' fees were not available. See Schulke Radio Prod., Ltd. v. Midwestern Broadcasting Co., 6 Ohio St. 3d 436 (1983) (holding that the parties' choice of law provision would not apply when the law of the chosen state would be contrary to the fundamental policy of a state having a greater material interest in the issue than the chosen state and such state would be the state of the applicable law in the absence of a choice of law by the parties). Plaintiff cites no cases in support of its conclusion that Ohio has a fundamental policy in favor of awarding attorney's fees in fraud actions, and I have found none. Therefore, I find that California law also controls plaintiff's claim for attorneys' fees, such that such fees are not recoverable.[1]

**Fraud**

The elements of fraud, under California law, are 1) misrepresentation (false representation,

---

[1] Because plaintiff's claim for punitive damages will hinge on the findings on the fraud claim, see Ca. Civ, Code § 3294, this claim shall be held in abeyance along with the contract claims, pending disposition of the fraud claim.

concealment, or nondisclosure); 2) knowledge of falsity (or 'scienter'); 3) intent to defraud, i.e., to induce reliance; 4) justifiable reliance; and 5) resulting damage." <u>Lazar v. Superior Court of Los Angeles County</u>, 12 Cal. 4th 631, 638 (1996).

I find that, construing the record in the light most favorable to American Trim, summary judgment cannot be granted in Oracle's favor on the fraud claim. The two most striking allegations by American Trim deal with: 1) a purported demonstration in Troy, Michigan of the product plaintiff wanted to purchase, which defendant knew plaintiff wanted to purchase, "Oracle Automotive"; and 2) inclusion of the product description "Oracle Automotive CARaS" in the final agreement.

American Trim alleges that at the product demonstration in Troy, Mike Vandivier, an Oracle representative, told American Trim that the presentation was live and operational, and would be exactly what they would see if they were at a customer site. (Doc. 1 at 6-7). Oracle knew that American Trim wanted software with a "functional automatic integrated update of material releases and shipping schedules" and would not purchase any system which did not have this capability. (<u>Id</u>. at 6).

In Troy, according to plaintiff, Oracle gave a demonstration of the Oracle Automotive software, performing precisely the tasks which American Trim desired. Although the Oracle Automotive software did not actually exist yet, American Trim was never informed that the demonstration was only a simulation of a product still in production. An email from Jim Butts, an Oracle representative, to his superiors, stated, "to be honest, if you were an American Trim person attending that demo, you would have believed that you were being sold an automotive solution. That is the fundamental reason the demo was done in Detroit and not at some other Oracle office or American Trim site." (Doc. 49, Ex. 53 at 2).

5

Oracle responds to American Trim's allegations about the demonstration by noting instances in which Oracle disclosed the fact that Oracle Automotive was not yet operational. For example, Oracle points to a disclaimer in the Statement of Direction for Oracle Automotive, provided to plaintiff at an early stage in negotiations, which stated that the functionality described could not be incorporated into any contract. Also, the "availability" section of the Statement of Direction made clear that the software was in the Beta production phase, and gave no commitment as to when "Beta" testing would end and production release would occur.

Oracle's reliance on the Statement of Direction is misplaced, however, because the statement was issued before the Troy demonstration. It would not have been unreasonable for American Trim to have relied on the statements and representations Oracle allegedly made at the Troy demonstration, following receipt of the Statement of Direction.

Oracle asserts, however, it made other disclosures after the Troy demonstration. Oracle states that there was a conference at which the status of Oracle Automotive was disclosed, and that American Trim could have attended this conference. Also, Oracle points to a press release disclosing the fact that Oracle did not plan to release Oracle Automotive, as part of Release 11, until 1998.

These facts may suggest that American Trim should have known Oracle Automotive was not available for sale in 1997, despite any representations made at the Troy demonstration. But, American Trim makes one other uncontested allegation regarding Oracle's fraudulent conduct. Specifically, the proposed contract presented by Oracle for approval did not include the product "Oracle Automotive". (Doc. 53 at Ex. 14). Instead, the proposed referenced the product "Radley CARaS". American Trim rejected this contract, and told Oracle that it would not make any purchase unless the Oracle

Automotive software, which it had seen demonstrated in Troy, was included in the package. Oracle revised the contract to include a reference to "Oracle Automotive CARaS", and American Trim signed the contract. (Doc. 53 at Ex. 11). It is undisputed that the software package delivered to American Trim did not contain the Oracle Automotive software American Trim saw in Troy, as the product did not yet exist.

Based on American Trim's allegations regarding the Troy demonstration, as well as American Trim's refusal to sign a contract without the inclusion of the Oracle Automotive software, and Oracle's subsequent inclusion of the term "Oracle Automotive CARaS"[2], I find that genuine issues of material fact exist on American Trim's fraud claim. It is not clear that American Trim cannot establish each of the elements of fraud. Likewise, summary judgment on plaintiff's negligent misrepresentation is also inappropriate.

---

[2] Oracle asserts that this term referred to the very same Radley CARaS software that was previously listed in the proposed contract. At the very least, the use of this term after American Trim's assertion it would not make a purchase absent Oracle Automotive creates a question of fact on the fraud claim.

Therefore, it is hereby

    ORDERED THAT

    1. Defendant's motion for summary judgment that California law governs all claims be, and hereby is, granted;

    2. Defendant's motion for summary judgment that plaintiff is not entitled to recover attorneys' fees be, and hereby is, granted;

    3. Defendant's motion for summary judgment on plaintiff's fraud and negligent misrepresentation claims be, and hereby is, denied.

    So Ordered.

    /s/ James G. Carr
James G. Carr
United States District Judge