IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| AMERICAN TRIM, L.L.C. | ) | CASE NO. 3: 99CV7265 |
| | ) | |
| *Plaintiff,* | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | **RESPONSE OF DEFENDANT ORACLE** |
| | ) | **CORPORATION AND SQUIRE, SANDERS** |
| ORACLE CORPORATION | ) | **& DEMPSEY L.L.P. TO AMENDED** |
| | ) | **ORDER OF SEPTEMBER 19, 2002** |
| *Defendant.* | ) | **REGARDING SANCTIONS** |

## I.    INTRODUCTION

In response to this Court's Amended Order of September 19, 2002 (Doc. #256),

Defendant Oracle Corporation ("Oracle") submits this response "on the merits to the motion for

attorneys' fees" filed by Plaintiff American Trim, L.L.C. ("American Trim").

American Trim's motion (Doc. #238) seeks the issuance of an order to show

cause why attorneys' fees should not be awarded, on the basis of statements contained in this

Court's Order of February 25, 2002, denying Oracle's motion for reconsideration and

mentioning Rule 11.  (Doc. #133).[1]  Oracle responded to American Trim's motion by stating to

the Court that it believed no such order to show cause was necessary.  (Doc. #242).  In the

alternative, Oracle requested an opportunity to introduce evidence and argument in the event that

the Court did determine to issue an order to show cause.  (Id.).  In its September 19, 2002 Order,

the Court requested further briefing from Oracle "on the merits."  (Doc. #256).

---

[1] American Trim's motion is not itself a motion for the award of attorney fees, which
would be prohibited by the "safe harbor" provision of Rule 11.  Fed.R.Civ.P. 11(c)(1)(A).

Under the circumstances, Oracle interprets the Court's September 19 Amended Order (Doc. #256) as an order "to show cause why plaintiff should not be compensated under Fed. R. Civ. P. 11 for the attorneys' fees it incurred in responding to" Oracle's motion of February 8, 2002.  (Doc. #133).  Accordingly, Oracle and its attorneys offer this response as though they had been so ordered to show cause.  In the event this filing and the accompanying declarations are not deemed to have shown sufficient cause that Rule 11 sanctions not be imposed, Oracle and its attorneys respectfully request an evidentiary hearing and further opportunity for argument in conjunction with such a hearing.

## II.    PROCEDURAL BACKGROUND

A detailed recitation of the relevant procedural background is essential to understanding why Oracle filed the motion for reconsideration at issue and why no sanctions should be imposed.

### *Complaint and Answer*

On May 5, 1999, American Trim filed a five count Complaint.  (Doc. #1).  The first three counts of the Complaint alleged breach of contract, breach of express warranties and breach of implied warranties.  The fourth count alleged negligent misrepresentation, and the fifth count alleged fraudulent inducement.  On July 23, 1999, Oracle filed its Answer.  (Doc. #10).  In its Answer, Oracle, among other things, stated that it did not breach the Agreement (defined as the contract documents attached to the Complaint) and did not breach any warranty that it made, and that American Trim's claims could not be sustained in the face of Oracle's compliance with the Agreement.  (See, e.g., Doc. #10 at 9-11).  Oracle also asserted that its actions did not cause harm to American Trim.  (Id.).

### *Oracle Moves for Partial Summary Judgment*

On February 19, 2001, Oracle filed its Motion for Partial Summary Judgment (Doc. #23), and there followed extensive briefing and oral argument on that motion.  (Docs. ##24, 46, 56, 62, 79, 87).[2]

Oracle moved for partial summary judgment against American Trim on the following counts of the Complaint:  Count I (breach of contract), Count II (breach of express warranties), Count III (breach of implied warranties), Count V (fraudulent inducement), and certain damages sought in the Complaint.  (Oracle's Motion for Partial Summary Judgment (Doc. #23).  Oracle did not move for summary judgment on Plaintiff's negligent misrepresentation claim (Count IV).  As set forth in its Brief in Support, Oracle explained its view of the critical issues to be tried:

> At best, viewing the evidence in the light most favorable to the Plaintiff, the only viable claim presented is Plaintiff's claim for negligent misrepresentation.  The crux of this claim is that American Trim is dissatisfied with its contract because the software licensed to American Trim did not meet American Trim's expectations.  *More specifically at issue is the justifiability of those expectations, and whether anything that Oracle did, said, or provided caused any harm to American Trim.  In short, on this claim the issue is whether American Trim's dissatisfaction is Oracle's fault, or its own fault.*
>
> Oracle is confident that it will ultimately prevail on this claim at trial, but recognizes that disposition of the claim at this stage is not warranted under Rule 56.  Thus, Oracle does not seek summary judgment on the negligent misrepresentation claim.

(Doc. #14, at 1-2) (emphasis added).

---

[2] Between Phases I and II of the trial of this matter, there was additional summary judgment briefing.  (Docs. ##180, 186, 187).

Oracle's motion for partial summary judgment was fully briefed, with each party filing its final "supplemental briefs" on May 25, 2001 and June 1, 2001 respectively.  The Court conducted oral argument on June 19, 2001.  (Doc. #87).

### *Partial Ruling on Summary Judgment, and Bifurcation*

On July 11, 2001, the Court convened a telephone conference with counsel.  (See Doc. #90).  In that conference, which was not transcribed, the Court informed counsel that it was prepared to issue a partial ruling on the motion for partial summary judgment overruling that portion of the motion directed to the fraud claim, and finding California law applicable to the claims.  (See Doc. #88).  Also in that telephone conference, the Court raised a suggestion to counsel that it was considering bifurcating the case to try the tort claims (fraud and negligent misrepresentation) first, while holding all other issues in the case (including punitive damages and all contract and warranty issues) in abeyance.  (Id.)  During the conference, Oracle informed the Court that it would object to such an approach, and the Court invited briefs from the parties on the issue.  (Id.).  (See also, Doc. #90; Thomas Decl. at ¶5).  There was no discussion in that conference that indicated that the Court was considering trying only certain liability issues pertinent to the tort claims in the first phase of trial, leaving other liability issues pertinent to the tort claims to be tried in a second phase.  (Thomas Decl. at ¶5).

On July 12, 2001, the Court entered an Order with respect to a portion of Oracle's Summary Judgment Motion.  The Court held that California law governed all claims in this matter.  (Doc. #86 at 2-3).  The Court also held that, as a result of the application of California law, American Trim would not be entitled to recover attorney's fees.  (Id. at 3).  The Court denied Oracle's motion with respect to American Trim's fraudulent inducement claim.  (Id. at 5, 7).  Although Oracle had not moved for summary judgment on the negligent misrepresentation claim,

the Court also "denied" summary judgment on the claim for negligent misrepresentation.  (Id. at 7-8).

Consistent with the Court's statements in the July 11, 2001 telephone conference, the Court specifically held in abeyance those portions of Oracle's partial summary judgment motion concerning the breach of contract and warranty claims and the availability of punitive damages.  (Id. at 4 n.1).

On July 18, 2001, the parties submitted their briefs concerning the Court's bifurcation suggestion.  Oracle opposed bifurcation, while American Trim supported it.  (Docs. ##88, 89).  Neither party suggested or discussed in its briefing the possibility that the question of liability for fraud and negligent misrepresentation would itself be separated across two phases.

On July 23, 2001, the Court conducted the scheduled telephone conference with counsel.  Over Oracle's objection, the Court issued an oral ruling bifurcating the trial.  (See Transcript of July 23, 2001 Hearing, Doc. #93).  In its oral ruling, the Court for the first time indicated that it intended to split the case into three trials (hereinafter referred to as "Phase I," "Phase II," and "Phase III").  The Court introduced the concept, saying,

> my inclination would be to try the fraud and negligent
> misrepresentation claims, see what happens on the question of
> liability and set it down in front of the same jury a month or so
> later to try the remedy issues.

(Tr. 7/23/01 at 3:15-19) (emphasis added).  The Court reiterated its intent to split the fraud trial along liability and damages lines when it added, "I would expect that [a second] trial would be, in essence, a damages trial before the same jury[.]"  (Tr. 7/23/01 at 4:13-15).  There was no suggestion in this discussion that the scope of the first phase would exclude any issue of underlying liability for fraud or negligent misrepresentation (as opposed to issues of liability for punitive damages, which the Court had held in abeyance in its summary judgment ruling).

-5-

### *The Court's January 9, 2002 Ruling Regarding the Scope of the First Two Trials*

Under a letter dated November 30, 2001, American Trim presented the Court with a proposed order that it suggested would reflect the Court's July 23, 2001 ruling.  (<u>See</u> Thomas Decl. at Exh. 1 (Letter from Counsel and American Trim's Proposed Order, also attached as Exhibit C to Doc. #98)).  In the letter, American Trim's counsel described the "'trifurcated'" trial as follows: "(1) trial on American Trim's fraud claim; (2) trial on fraud damages; and (3) trial on contract claim and defenses[.]"  The proposed order submitted by American Trim suggested that "Phase One of the trial  . . . will involve only the merits of Plaintiff's claims for fraudulent misrepresentation and negligent misrepresentation."  (<u>Id</u>.).  It separately provided that, "If the jury finds in Plaintiff's favor on the merits of either its fraudulent misrepresentation of its negligent misrepresentation claims, then . . . Phase Two of the trial [will] involve only a determination of Plaintiff's damages, compensatory and/or punitive, which are attributable to those claims."  (<u>Id</u>.).

Oracle did not believe that the proposed order submitted by American Trim accurately, clearly and completely described what the Court ordered.  Accordingly, while maintaining its objection to bifurcation, Oracle countered with a proposed order of its own.  (<u>See</u> Thomas Decl. at Exh. 2 (Letter from Counsel and Proposed Order, also attached as Exhibit D to Doc. #98)).  Oracle's proposed order was submitted to the Court (and served upon American Trim's counsel) on December 4, 2001.  (<u>Id</u>.).

As pointed out in the cover letter submitted by Oracle's attorneys, Oracle's proposed order specifically used the term "liability" in defining the scope of the Phase I proceedings.  Oracle used this term because that is the term that the Court had used in the conference of July 23, 2001.  (Tr. 7/23/01 at 3).

On January 9, 2002, the Court entered the Order submitted by Oracle with one non-substantive change.  (Doc. #115).[3]  The January 9, 2002 Order provided, in part, that Phase I of the trial would determine "the question of liability on Plaintiff's claims for negligent misrepresentation (Count IV) and fraudulent inducement (Count V)."  (January 9, 2002 Order, Doc.# 115).  According to the Order, Phase II would proceed if the jury were to find "Defendant liable as to either Plaintiff's fraudulent inducement or its negligent misrepresentation claims." (Id.).

### The Court's January 31, 2002 Redefinition of the Scope of the First Two Trials

In December 2001, the parties filed and briefed motions in limine.  (Docs. ##95-113).  Among the issues raised in these motions was the scope of the evidence that Oracle would be permitted to present concerning its theory of the fraud and negligent misrepresentation claims. (See Docs. ##96, 104, 110, 113).

Oral argument was held on the motions in limine on January 31, 2002.  (Doc. #118).  During the course of that hearing, the Court informed counsel for the first time that it did not intend to try liability on any claim in the first phase of the trial.  Instead, the Court indicated that trial on the element of causation, a prerequisite to any finding of liability, would be postponed until Phase II.  (Id. at 10-13, 23, 27-29).  The Court stated that with regard to Phase I, "We're not talking about a finding of liability."  (Id. at 23).

This was the first time that the Court had indicated that the Phase I trial would not be a liability trial, but rather that the question of liability on the fraud and negligent misrepresentation claims would itself be bifurcated across two trials.  This ruling was a

---

[3] The change to the Order proposed by Oracle was that the trial date of January 24 was changed to March 4 to reflect the Court's January 3, 2002 sua sponte continuance of the January 24 trial date.

substantial change from the Order entered by the Court three weeks before the hearing on the motions in limine, in which Order the Court stated that the Phase I trial would be a liability trial on the fraud and negligent misrepresentation claims. (Doc. #115).

### The Motion for Reconsideration

On February 8, 2002, Oracle filed its motion for reconsideration and asked that the Court complete its work on the motion for partial summary judgment, and hold a single trial on all remaining claims. (Doc. #117). In the alternative, Oracle requested that the Court reinstate its Order of January 9, 2002, to the effect that the Phase I trial would be a liability trial on the fraud and negligent misrepresentation claims, in order to permit Oracle the opportunity to present its theories of the case (in which causation played a key role) at the same time as American Trim presented its own theories. (Id.). In submitting the motion, Oracle and its attorneys acknowledged that motions to reconsider are disfavored by this Court, but Oracle and its attorneys believed that the motion was called for by the unusual circumstances of the Court's late expression of its decision to postpone the issue of causation and remove it from the Phase I proceedings. (Id.; Thomas Decl. at ¶¶12, 24-30).

On February 11, 2002, the Court held a settlement conference. (Doc. #119). At the conference, the Court stated that it had read the motion for reconsideration and was inclined to deny it. However, the Court invited plaintiff to file a response to the motion. The Court did not state or otherwise indicate that it believed that the motion was frivolous or should be withdrawn. (Thomas Decl. at ¶¶14, 29; Daley Decl. At ¶¶5, 6).

American Trim filed its opposition to Oracle's motion on February 19, 2002. In arguing against reconsideration, American Trim's primary arguments were (1) that "'motions to reconsider' are not contemplated by the Federal Rules of Civil Procedure and are procedurally

improper;" (2) that "Oracle has known for nearly seven months that the Court did not intend to present the issues of causation and damages to the jury during Phase One;" and (3) that "Oracle is simply wrong in its repeated protestations that 'causation' is an element of 'liability' for fraudulent or negligent misrepresentation."  (Doc. #120 at 4-5).

On February 25, 2002, a week before voir dire, the Court overruled Oracle's motion for reconsideration.  (Doc. #133).  The Court acknowledged that it had previously "informed counsel that trial in this case would be trifurcated into three stages:  1) liability on the fraud and negligent misrepresentation claims; 2) damages as to those claims; and, if needed, 3) liability and damages as to the contract claims."  (Id. at 2).  After acknowledging, as well, that "causation is a 'liability' issue," the Court noted that, "Regardless [of the fact that causation is an element of liability], I still have the discretion to structure the trial as seems most appropriate to me." (Id.).[4]  In the same Order, the Court stated that its "decision to limit the scope of phase one to whether 'something called Oracle Automotive was promised and, if so, was it delivered,' as I announced on July 23, 2001, does not deprive Oracle of its ability, in due course, and if needed, to meet plaintiff's proof as to causation."  (Id. at 3).

The Court indicated that it perceived that, "to the extent Oracle's lawyers claim to be confused about what will be tried during phase one, they could have asked me to clarify what I had in mind."  (Id.).  The Court further indicated its belief that its "rulings – and, most certainly, my most [sic] ruling about the limited scope of phase one – have been, I believe clear."  (Id. at 4).  The Court then found that "[t]he present motion was unnecessary," and gave notice of its intent

---

[4] Oracle never contested that the Court has discretion (pursuant to Rule 42(b) of the Federal Rules of Civil Procedure and cases interpreting the Rule) to bifurcate issues, and still does not contest that point.  Rather, Oracle's position has simply been that the Court's exercise of that discretion in the manner employed in this case was unwarranted and unfairly prejudicial under the particular circumstances of this case.

"to call on Oracle [at the conclusion of the proceedings] to show cause why plaintiff should not be compensated under Fed. R. Civ. P. 11 for the attorneys' fees it incurred in responding to the instant motion."  (Id.).  The Court indicated its impression that Oracle's motion was an "unfounded motion[] for reconsideration" that "renew[ed] objections to rulings that have been preceded by consideration of the arguments [that Oracle's attorneys] simply repeat[ed] in support of" the motion.  (Id.).  The Court concluded by stating that, "A party that prevails on rulings should not have to invest resources in having those rulings reconfirmed."  (Id.).

### *Final Pretrial Preparation, and Further Definition of the Scope of Phase I*

On February 21, 2002, after Oracle's motion for reconsideration had been briefed but before the Court had issued its ruling thereon, counsel for the parties exchanged proposed jury instructions.  (Thomas Decl. at ¶17 and Exhibit 3).  Although this exchange occurred three weeks after the January 31, 2002 hearing, the instructions proposed by American Trim included an instruction asking the jury to consider the issue of whether the alleged misrepresentations "were a cause in fact of the plaintiff's injury," and an instruction on "malice" relevant to the punitive damages claim as to which summary judgment was still pending,  (Id.).  American Trim also submitted proposed "General Verdict" forms asking the jury to determine whether it found Oracle "liable" on American Trim's various claims.  (Id.).

On February 26, 2002, the day after the ruling on the motion for reconsideration, the parties filed their proposed jury instructions, and Oracle filed its brief in support of its proposed instructions.  (Docs. ##135, 136, 138).  Again, among American Trim's requested jury instructions were an instruction asking the jury to consider the issue of whether Oracle's alleged misrepresentations "were a cause in fact of the plaintiff's injury," and an instruction on "malice" relevant to the punitive damages claim as to which summary judgment was still pending,  (Doc.

-10-

#138 at 19, 25).  American Trim also submitted proposed "General Verdict" forms asking the jury to determine whether it found Oracle "liable" on American Trim's various claims.  (Id. at 29-35).

Voir dire was conducted by Magistrate Judge Armstrong on March 4, 2002.  That afternoon, voir dire was briefly interrupted and a conference was convened among the Court and counsel.  (Tr. 3/4/02 (Doc. #177) at 101-29).  At this conference, American Trim sought a ruling in limine restricting the temporal scope of the evidence and argument that Oracle could offer, to prohibit Oracle from discussing and introducing evidence arising in the latter period of the parties' relationship (the September 1998 to January 1999 time frame).  (Id. at 101).  The Court ruled in limine that American Trim would be permitted to define the temporal range as to which evidence could be presented by either party, and that as to the scope of evidence that Oracle would be permitted to discuss and present, the Court would "wait and see how [American Trim's] case unfolds and develops[.]"  (Id. at 110).

As a part of the March 4 discussion the following colloquy occurred:

> MR. BURKE:  Your honor - -
>
> THE COURT:  Go ahead.
>
> MR. BURKE:  - - you would like us to stop as of the time it's discovered?
>
> THE COURT:  You stop where you think you have made your case.  I mean, if you think - - if it has to go on to whenever, then I'm going to have to sit down and figure out what they [Oracle] want to do in terms of response.  I mean, I'm not directing you at all.  It's your case to prove.
> The point I'm making is we're going to deal with the elements of essentially in a crude form what was promised, what did you get.
>
> MR. BURKE:  I understand.

THE COURT: And you've got representation false, that it was false with the intent to deceive, and detrimental reliance. I think that's it. If I missed an element, somebody tell me, but I think that's it, and then we got causation and we're going to deal with that in April if you [American Trim] prevail. If you lose, you lose, and I turn to the summary judgment motions on contract and go from there.

MR. BURKE: I understand.

* * *

THE COURT: I want to make clear, I'm not directing you [American Trim] what you can and cannot put in.
My point is I'm saying to him [Oracle] he's going to be allowed to respond to your proof. Now, if your proof presents a protracted time frame and there are things relevant in there, then he's going to be entitled, I would expect, to present relevant and material evidence in response to that proof.

MR. BURKE: I understand, Your Honor.

(Id. at 112-13).

### *Trial and Interphase Proceedings*

The Phase I trial was held from March 5 through March 14, 2002. During the course of discussion and argument regarding the jury instructions, the Court decided to use the plaintiff's proposed instructions as the basis for its instructions to the jury. (Tr. 3/8/02 at 660). Although the "cause in fact" language proposed by American Trim was removed from the instructions at Oracle's request, American Trim continued to maintain that the "cause in fact" language in its proposed instructions should be given to the jury. (Tr. 3/8/02 at 682-83). American Trim also maintained that its proposed instruction concerning "malice" relevant to the question of punitive damages should be given in Phase I, and the Court indicated that it would give such an instruction until Oracle's counsel pointed out that the punitive damages question

had been held in abeyance and a summary judgment motion was pending thereon. (Tr. 3/8/02 at 687-94).

The jury began its deliberations the afternoon of Thursday, March 14 and returned its findings on the afternoon of Friday, March 15. The jury returned findings in favor of American Trim on various elements of intentional misrepresentation, intentional concealment, false promise (all three species of intentional fraud under California law), and negligent misrepresentation. (Doc. #164).

On March 15, 2002, after the jurors were excused at the close of Phase I, American Trim announced that it intended to request reconsideration of the Court's choice of law ruling, which had been made in the course of the Court's partial summary judgment ruling in July 2001. The Court stated that it would permit American Trim to make such a motion for reconsideration, and set a briefing schedule. (Tr. 3/15/02 at 19-21).

American Trim did file a motion for reconsideration of the choice of law ruling, combining it into a single filing with a supplemental brief on the matter of summary judgment as to punitive damages. (Doc. #180). Oracle responded separately to each point (Docs. ##186 and 187), and American Trim filed a reply concerning its motion for reconsideration (Doc. #189). The Court denied American Trim's motion for reconsideration of the choice of law ruling, noting that American Trim's position had no basis in law. (Doc. #190).

The Phase II trial resumed on May 2, 2002. In discussing an introductory charge to the jury to open Phase II, counsel for American Trim made the following statement:

> One of our problems, Your Honor, is Oracle keeps saying there has been no finding of causation. There has been a finding that this contract was induced by fraud, that this contract caused – that their fraud caused us to sign this contract. There's no doubt about that from the jury's finding. The question is what damages flow from that. The causation and the inducement of the contract by fraud

clearly was found.  That's my problem with this whole causation in a vacuum argument.

(Tr. 5/2/02 at 25).

## III.  ARGUMENT

In order to be subject to Rule 11 sanctions, the filing of the motion for reconsideration must have been unreasonable under the circumstances.  Silverman v. Mutual Trust Life Ins. Co., 98 F.3d 926, 930 (6th Cir. 1996) (citing, among others, Century Products, Inc. v. Sutter, 837 F.2d 247, 250-251 (6th Cir. 1988)).  "The conduct of counsel that is the subject of sanctions must be measured by an objective standard of reasonableness under the circumstances."  Century Products, 837 F.2d at 251 (cited in Silverman, 98 F.3d at 930).

This Court has held that,

> Where a motion for reconsideration simply repeats the movant's earlier arguments, without showing that something material was overlooked or disregarded, presenting previously unavailable evidence or argument, or pointing to substantial error of fact or law, such motion is frivolous [for purposes of Rule 11].

The Andersons, Inc. v. Consol, Inc., 208 F.Supp.2d 847, 850 (N.D.Ohio 2002).  In connection with assessing the possibility of sanctions on a motion for reconsideration, this Court has noted the Sixth Circuit appellate standard that sanctions are appropriate where "the appeal was prosecuted with no reasonable expectation of altering the district court's judgment and for purposes of delay or harassment or out of sheer obstinacy."  (Id. (internal quotation marks and citation omitted)).

The Sixth Circuit has noted that while, strictly speaking, the "safe harbor" provision of Rule 11 applies to motions by parties and not to instances wherein a court sua sponte issues a show cause order, a court should "take into account the possibility of corrective action" and should not issue Rule 11 sanctions where it has not allowed "amendment or

-14-

withdrawal of objectionable" filings.  Wesely v. Churchill Development Corp., 1996 U.S. App. LEXIS 27857 (6th Cir. October 24, 1996).

With regard to the potential for sanctions, the Court's February 25, 2002 Order appears to have four possible premises:  (1) that, as American Trim argued, motions to reconsider are inherently improper; (2) that, as American Trim implied, the Court's determination of the scope of the Phase I proceedings was a matter that had been fully briefed and argued, and clearly communicated, prior to the January 31, 2002 hearing; (3) that the Court's decision to exclude causation from the Phase I proceedings was a matter that was fully briefed and argued, and clearly and finally communicated, in conjunction with the January 31, 2002 hearing; and (4) that the Court's definition of the scope of Phase I in conjunction with the January 31, 2002 hearing was so clear and definitive that no party could have misunderstood it or could reasonably have expected to alter the Court's judgment thereon.  Oracle respectfully suggests that the record does not support any of these premises.

Moreover, it would be inappropriate to require Oracle or its attorneys to pay plaintiff's attorney fees incurred in responding to the motion for reconsideration in this unusual case in which the Court, after reviewing the motion for reconsideration, stated in a pretrial conference that it was inclined to deny the motion but nevertheless invited opposing counsel to file a responsive brief.

**A.      Motions For Reconsideration Are Not Inherently Sanctionable**

Oracle and its attorneys cannot be subject to sanction on the grounds that motions for reconsideration are inherently inappropriate under all circumstances.  Indeed, the Sixth Circuit itself has suggested that attorneys should consider filing motions for reconsideration under circumstances in which they may be appropriate.  See Flannigan v. Conrail, 888 F.2d 127

(Table Case), 1989 U.S. App. LEXIS 16601, *4 (6th Cir. November 2, 1989).  Furthermore, American Trim cannot seriously contend that motions for reconsideration are inherently sanctionable in that American Trim submitted and briefed its own motion for reconsideration (on the choice of law question) subsequent to the filing by Oracle that is at issue herein.  In its motion, American Trim did not cite any authority that had not already been briefed by the parties and considered by the Court (see Doc. #186), and, as the Court recognized (Doc. #190), American Trim's motion for reconsideration had no basis in law.

**B.  The Court Had Not Clearly Expressed That The Element Of Causation Would Be Excluded From The Scope Of Phase I Prior To January 31, 2002, And The Question Of So Excluding Causation Had Not Been Briefed**

That the Court intended to exclude the issue of causation from Phase I – or that it was even considering such a course of action – was not clearly communicated prior to January 31, 2002.

There was nothing in the Court's comments during the July 11, 2001 telephone conference that indicated that it intended to exclude the issue of causation from Phase I of a bifurcated proceeding, and accordingly neither party addressed such a question in its July 2001 brief.  American Trim itself does not suggest that Oracle should have – or even could have – known that such a division of issues was in the Court's mind at that time.

American Trim does, however, argue that, at the time of filing its motion for reconsideration, Oracle had "known for nearly seven months that the Court did not intend to present the issues of causation and damages to the jury during Phase One."  (Doc. #120 at 5).  It bases this argument on the remarks of the Court opening the July 23, 2001 conference, made before the issue of "trifurcation" had even been broached.  Those opening remarks, and the Court's response to a comment from counsel for American Trim, bear quotation at length:

THE COURT:  Okay.  I'm going to go ahead and bifurcate the case.  I read both your memos.  Just seems that contrary to the defendant's contention that there potentially is a fairly considerable savings of time, realizing that that's not a certainty, but it's certainly pretty significant potential regardless of the outcome, and I really think that there's not that much overlap, as I see it, between the issues that would be tried on the fraud and negligent misrepresentation because I think that's a pretty straightforward issue, was something called Oracle Automotive promised, and if so, was it delivered, and if not, that's the end of the fraud case and could potentially impact significantly on the contract claims.  And the contract claims, as I understand it, if the plaintiff prevails on the fraud case, are pretty much mooted because the contract is voided and –

MR. BURKE:  Your Honor, this is Jim Burke.  I've got one clarifying issue.  I didn't think that in any sense the Court's order did what counsel for Oracle claimed it did which is somehow defer the issue of punitive damages to a later hearing.  It seems to me that if we're going to try the fraud case, we got to try the fraud remedies.  That is still a viable claim, and I did disagree with the point that was in their brief that somehow that is something to be tried later.  That seems to me to be terribly wasteful.

THE COURT:  If it were, I think what I would do, and I think we can actually wait, my inclination would be to try the fraud and negligent misrepresentation claims, see what happens on the question of liability and set it down in front of the same jury a month or so later to try the remedy issues.

(Tr. 7/23/01 at 2-3).

American Trim focuses on the Court's phrase, "was something called Oracle Automotive promised, and if so, was it delivered[.]"  In essence, American Trim is suggesting that, on the basis of the Court's use of this phrase in the context above, Oracle somehow knew that every reference by the Court to "liability" in this telephone conference and thereafter did not actually mean *liability*, but instead meant *all issues pertaining to liability except for causation*.[5]

---

[5] American Trim's further assertion that causation is not an element of liability in cases of fraudulent or negligent misrepresentation under California law is patently incorrect, as evidenced repeatedly in the numerous cases and model jury instructions that have been presented

This argument is not sound on its face, and most certainly is not a reasonable basis upon which to sanction Oracle and its counsel.

As the Court itself has noted, no matter how it opened the bifurcation discussion in the July 23, 2001 conference, it ultimately communicated to the parties in that conference that it intended to "trifurcate" the case, and that the first phase of trial would be set to determine "liability on the fraud and negligent misrepresentation claims," and the second phase would determine "damages as to those claims[.]"  (Doc. #133 at 2.  See also, Tr. 7/23/02 at 3-4).  That Oracle believed that the Court had so communicated its intentions is reinforced by the language of the proposed order Oracle submitted to the Court on December 4, 2001.  That Oracle's belief in this regard was a reasonable one is reinforced by the Court's decision to sign Oracle's proposed order.

In its Order denying Oracle's motion for reconsideration, the Court stated, "to the extent Oracle's lawyers claim to be confused about what will be tried during phase one, they could have asked me to clarify what I had in mind."  (Doc. #133 at 3).  That is, however, exactly what both parties had done in submitting their proposed orders in November and December 2001, and the Court had chosen to enter, almost verbatim, the order proposed by Oracle.  Oracle objected to the Court's decision to bifurcate the case, but it did not move to reconsider that decision prior to January 31, 2002 because it did not understand that the Court had gone beyond the issues that had been briefed in July 2001 to order a Phase I trial that would not determine liability on any claim, but would instead exclude the issue of causation that was a cornerstone of Oracle's case.

---

to the Court.  E.g., Service By Medallion, Inc. v. Clorox Co., 44 Cal. App. 4th 1807, 1819 (Cal. Ct. App. 1996); Kruse v. Bank of America, 202 Cal. App. 3d 38, 60-61 (Cal. Ct. App. 1988); BAJI 12.31, 12.35, 12.45.

In opening its summary judgment briefing, Oracle had plainly communicated to American Trim and to the Court that at the core of the case it expected to try was the question "whether anything that Oracle did, said, or provided caused any harm to American Trim."  (Doc. #14 at 1-2).  Oracle and its attorneys had no reason to believe that one of the pillars of Oracle's liability case had been removed without the Court mentioning specifically that it was doing so. In short, prior to January 31, 2002, Oracle had neither any belief nor any reason to believe that the term "liability" as used by the Court did not mean "liability" as used in the law.

Under these circumstances, and especially given that the Court signed Oracle's proposed order regarding the scope of the trial phases, if Oracle misunderstood what the Court intended prior to January 31, 2002, concerning its definitions of the phases of trial, that misunderstanding was not unreasonable.

**C.     The Court Gave No Notice That In Conjunction With The January 31, 2002, Hearing The Court Would Redefine The Scope Of Phase I And Overrule The January 9, 2002 Order**

The January 31, 2002 hearing took place just three weeks after the Court signed Oracle's proposed order regarding the scope of the various phases of trial, and in doing so had defined Phase I to be a liability determination phase.  Oracle and its attorneys had no reason to believe that the Court intended anything other than what it had ordered.  Oracle and its attorneys believed that the January 31, 2002 hearing was to address the parties' motions in limine. Accordingly, Oracle's attorneys neither briefed nor otherwise prepared argument concerning excluding the issue of causation from Phase I.  (Thomas Decl. at ¶¶12, 28).

**D.    The Motion For Reconsideration Did Not Merely Restate Arguments Already Presented To And Considered By The Court, And The Finality And Clarity Of The Court's Decision Were Not Established When The Motion Was Filed**

Given that Oracle had never briefed, and had never had reason to brief, the question of cutting the issue of causation away from the remainder of the liability case, Oracle's motion for reconsideration did not merely rehash arguments that were previously presented.  For example, Oracle had not previously cited (and had not previously had any reason to cite) the cases cited at pages 9-10 of its brief in support of the motion for reconsideration, concerning the centrality of causation to liability and the fact that causation is not excluded from a liability phase in a conventional bifurcation of liability and damages issues.  (Doc. #117 at 9-10).[6]

Moreover, Oracle's arguments concerning prejudice, jury confusion, relative convenience and economy, and fundamental fairness were placed in a substantially new context by the Court's decision to prevent Oracle from presenting one of its key liability arguments until the second phase of trial.  (Thomas Decl. at ¶25).  While the Court may have believed that it had given Oracle's counsel an opportunity to address these issues orally at the January 31, 2002 hearing itself, the fact is that the Court's change in direction regarding the scope of Phase I was not predicted, and there had been neither briefing nor preparation of argument concerning this issue that was absolutely critical to Oracle's case.  (Thomas Decl. at ¶28).

The effect of the postponement of causation was to allow American Trim to put its best and strongest case before the jury, while preventing Oracle from presenting its best and strongest response to the jury until after the jury had already deliberated upon and decided to

---

[6] In contrast, the motion for reconsideration filed by American Trim on the issue of choice of law cited no authority that had not already been cited by the parties and the Court in the original briefing, argument, and ruling on the choice of law question.

credit American Trim's version of events.  (Thomas Decl. at ¶28).  Under these circumstances, counsel for Oracle deemed it not only reasonable, but necessary in the best interests of the client to take steps to ensure that this critical issue was at some point framed and argued in writing. (Thomas Decl. at ¶28).  Oracle's motion was not filed unreasonably or frivolously,[7] it was filed after careful consideration in light of what Oracle perceived to be a sudden, unexpected, and dramatic turn of events that changed the course of trial.  (Thomas Decl. at ¶¶24-30).

Furthermore, to the extent that the Court perceived Oracle's motion as being potentially sanctionable on the basis that the Court's definition of the scope of Phase I during the January 31 hearing was of such clarity and finality as to be not reasonably subject to question, the record does not support the imposition of sanctions against Oracle or its attorneys on such grounds.  As became apparent from subsequent events, even counsel for American Trim did not have a settled understanding of what the Court intended the scope of Phase I to be.

For example, on February 21, 2002, before the Court ruled on Oracle's motion for reconsideration, but three weeks after the January 31 hearing, American Trim and Oracle simultaneously exchanged proposed jury instructions prior to their filing.  American Trim's proposed jury instructions called upon the jury to determine whether Oracle was "liable" on American Trim's tort claims, asked the jury to consider whether Oracle's actions were a "cause in fact" of injury to American Trim, and attempted to place issues relevant solely to the punitive damages claim ("malice") before the jury.  (Thomas Decl. at Exhibit 3).  On February 26, 2002, the day after the Court's ruling on Oracle's motion for reconsideration, American Trim filed these proposed jury instructions with the Court.  During argument regarding the jury instructions,

---

[7] That Oracle's motion to reconsider was not filed for purposes of delay is plain from the face of the brief, which did not seek any alteration of the March 4, 2002 trial date.  (Doc. # 117 at 2, 9-10, 15-16).

American Trim expressly adhered to its position that the jury should be asked to determine in Phase I whether Oracle's actions were a "cause in fact" of injury and whether Oracle acted with "malice" for purposes of assessing liability for punitive damages.[8]

Moreover, in the conference with the Court that occurred the day of voir dire, on the afternoon before opening statements, it was apparent that the scope of Phase I remained in a state of flux.  As set forth above, American Trim indicated that it still was not clear as to how the Court intended to define the scope of evidence that would be admitted in Phase I, until the Court clarified that it was leaving the decision up to the plaintiff to define that scope.  And American Trim's counsel again expressed that it was unclear on the scope of Phase I even after that Phase had concluded, arguing to the Court at the outset of Phase II that the issue of causation had already been considered and determined by the jury in Phase I.

**E.      American Trim Incurred Attorney Fees In Connection With The Motion For Reconsideration Only After The Court, Having Reviewed Oracle's Motion Papers, Invited Briefing From American Trim**

Oracle's attorneys made an effort to file the motion for reconsideration prior to the pretrial settlement conference on February 11, 2002, in order to give the Court an opportunity to review the motion and discuss it at the conference.  (Thomas Decl. at ¶29).  This strategy was apparently effective, in that the Court indicated at the conference that it had reviewed the motion.  (Thomas Decl. at ¶¶14, 29).

The Court did not ask Oracle to withdraw the motion, and did not suggest at the time that it considered the motion frivolous or contemptible.  (Id.).  The Court stated that it was

---

[8] The Court itself indicated that it had not clearly settled upon on the scope of Phase I when it stated that it intended to give the "malice" instruction proffered by American Trim, until it was reminded that it had expressly held issues regarding punitive damages in abeyance.  (Tr. 3/8/02 at 687-94).

inclined to deny the motion, but invited a responsive brief from the plaintiff's counsel.  (Id.).[9]
American Trim's counsel had not done any work on such a responsive brief prior to the
conference.  (Coffaro Aff. at 2 (stating that counsel's work on the responsive brief was
performed February 18 and 19, 2002, a week after the conference)).

## IV.    CONCLUSION

      By its motion for reconsideration, Oracle was briefing a critical issue that had
never been briefed, and that had been raised without warning at oral argument on January 31,
2002, when the Court reconsidered and overruled its own Order entered just three weeks before
(on January 9) that Phase I would be a liability trial.  For this primary reason, and for the other
reasons set forth above, sanctions are unwarranted.

      In the event that the Court does not deem this brief and the accompanying
declarations and exhibits sufficient to show cause why Rule 11 sanctions should not be imposed,
Oracle and its attorneys respectfully request the opportunity to be heard in an evidentiary hearing
and at oral argument.

---

[9] In responding to Oracle's motion for reconsideration, American Trim did not request
sanctions or costs.

Respectfully submitted,


s/ James D. Thomas
Walter J. Rekstis, III (0020877)
Email:  wrekstis@ssd.com
James D. Thomas (0039424)
Email:  jdthomas@ssd.com
Harris A. Senturia (0062480)
Email:  hsenturia@ssd.com
SQUIRE, SANDERS & DEMPSEY L.L.P.
4900 Key Tower
127 Public Square
Cleveland, Ohio  44144-1304
Telephone:  (216) 479-8500
Facsimile:  (216) 479-8780

Of Counsel:

Dorian Daley, Esq. (CA 129049)
Oracle Corporation
500 Oracle Parkway, M/S 5op7
Redwood City, CA  94065
(650) 506-0060

Attorneys for Defendant
Oracle Corporation

CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of September, 2002, a copy of the foregoing was filed

electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic

filing system.  Parties may access this filing through the Court's system.


s/ James D. Thomas
One of the Attorneys for Defendant
Oracle Corporation